# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2298-21

IN THE MATTER OF A.N.H.

_____

Submitted November 8, 2023 – Decided November 29, 2023

Before Judges Whipple, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Petition No. 0210-XTR-2021-1.

Louis P. Nappen, attorney for appellant A.N.H. (Evan F. Nappen Attorney at Law, PC, attorneys; Louis P. Nappen and Andrew G. Bitar, on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (K. Charles Deutsch, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A.N.H.[1] appeals from a March 24, 2022 order granting the State's petition for a Final Extreme Risk Protective Order (FERPO) entered under the Extreme Risk Protective Order Act of 2018 (Act), N.J.S.A. 2C:58-20 to -32.  We affirm.

We recite the facts from the testimony presented to the trial judge and the judge's April 11, 2022 written amplification of reasons in support of her March 24, 2022 order.

In March 2020, A.N.H. applied for a firearms permit.  In his application, A.N.H. represented he was never confined or committed to a mental institution or hospital for mental health treatment, nor treated or observed by a doctor or psychiatrists for a mental health condition.  Based on the information in his application, A.N.H. received a firearms permit.  In June 2020, A.N.H. bought a handgun.

In August 2021, the Federal Bureau of Investigation's Joint Terrorism Task Force (JTTF) contacted the Dumont Township Police Department (DTPD) regarding suspicious messages posted by A.N.H. on an online messaging platform and a social media platform.  Based on the JTTF's intelligence, the

---

[1] We use initials because "[a]ll records related to proceedings for [Final Extreme Protective Orders] are confidential and may not be disclosed to anyone other than the respondent . . . , except if good cause is found by the court to release such records."  Admin. Off. of the Cts., Administrative Directive #19-19, Guidelines for Extreme Risk Protective Orders, (Aug. 12, 2019) (Guidelines).

DTPD commenced a background investigation regarding A.N.H., which revealed his purchase of the handgun and undisclosed mental health issues.

On August 18, 2021, the DTPD filed an ex parte petition for a Temporary Extreme Risk Protective Order (TERPO) against A.N.H. The municipal court judge for Dumont Township granted a TERPO. Thereafter, police officers with the DTPD went to A.N.H.'s home and confiscated his handgun in accordance with the TERPO. Later that same day, A.N.H. voluntarily went to the DTPD and relinquished his Firearm Purchaser Identification Card (FPIC).

On March 22 and 24, 2022, a Superior Court judge conducted a plenary hearing to determine whether to issue a FERPO. The judge granted the State's petition for a FERPO on March 24, 2022. After A.N.H. appealed from that order, the judge provided an April 11, 2022 written amplification of reasons.

During the hearing on the State's petition for a FERPO, the judge heard testimony from Detective Lieutenant Luke Totten with the DTPD. The judge also considered various police reports of incidents with A.N.H. and medical records from A.N.H.'s stay at the New Bridge Medical Center in Bergen County (formally known as Bergen Regional Medical Center). Additionally, the judge heard testimony from Dr. Elliot L. Atkins, a licensed clinical psychologist.

Detective Lieutenant Totten testified regarding the DTPD's involvement

3

with A.N.H. In March 2014, the DTPD responded to a situation at the local high school involving a threat by A.N.H., who was then fifteen years old, to "throw [a classmate] out the window." A year later, the DTPD responded to a reported assault by A.N.H. on his father and his father's estranged wife. In May 2016, the DTPD responded to a report that A.N.H. threatened his sister with a "[s]amurai sword."

As a result of the May 2016 incident, while A.N.H. was still a minor, his mother took him to New Bridge Medical Center for a psychological evaluation and treatment.[2] The attending physician at the hospital, Dr. Edward G. Hall, diagnosed A.N.H. with impulse control disorder with unspecified depressive disorder. Dr. Hall noted that, while A.N.H. exhibited limited insight, poor judgment, and "[i]mpulsive aggressiveness," A.N.H. was "[i]ntelligent" and displayed "no clear clinical evidence of a danger to self or others." However, Dr. Hall further opined A.N.H. displayed superficial cooperation and provided "guarded" and "short standard answers" to the doctor's questions.

---

[2] A.N.H. claims he committed himself voluntarily. Because A.N.H. was a minor at the time, he could not legally or voluntarily commit himself. A.N.H.'s mother signed the hospital admission paperwork. According to the hospital admission records, A.N.H. had a police escort upon arrival due to "extreme aggressivity and assaultiveness demonstrated at home."

According to the testimony, A.N.H. "pressured" his mother to sign the hospital's release form because A.N.H. was not legally authorized to sign release forms for himself. Dr. Hall discharged A.N.H. three days after his admission to the hospital and instructed A.N.H. to seek mental health treatment through a specific treatment program. A.N.H. did not seek mental health treatment per Dr. Hall's discharge instructions.

Two days after A.N.H.'s release from the hospital, the DTPD responded to a report that A.N.H. brandished a knife at his fellow high school classmates.

In June 2018, the DTPD responded to a local restaurant regarding a dispute between A.N.H. and his co-workers. According to the police report, A.N.H. "grab[bed his boss's] ponytail and pulled him to the ground." A.N.H. then retrieved a hammer from his vehicle and returned to the restaurant. The boss declined to press charges against A.N.H.

Based on A.N.H.'s incidents involving the DTPD, and the information provided by the JTTF, Detective Lieutenant Totten testified there was "good cause to . . . pursue a TERPO." Additionally, the detective explained A.N.H. omitted information related to his mental health history in his FPIC application.

The judge then heard testimony from Dr. Atkins, an expert in clinical and forensic psychology, who testified on behalf of A.N.H. Dr. Atkins conducted a

A-2298-21

four-hour interview with A.N.H. and prepared a written report. Although Dr. Atkins had the DTPD reports regarding incidents with A.N.H., the doctor did not have A.N.H.'s hospital records at the time he rendered his report. Based on his subsequent review of the hospital's medical records, Dr. Atkins testified those records "reaffirm[ed]" his conclusions regarding A.N.H.

Dr. Atkins further testified A.N.H. was not a danger to himself or others. The doctor discounted A.N.H.'s prior incidents with the police, attributing those incidents to A.N.H.'s "immaturity and his extremely turbulent family situation." Dr. Atkins had no information to determine whether A.N.H.'s hospitalization in May 2016 was voluntary or involuntary. Additionally, Dr. Atkins was unaware the hospital diagnosed A.N.H. with depressive disorder and impulse control disorder. Despite lacking important information, Dr. Atkins opined A.N.H. "never presented as a danger to himself or others," and "today . . . is neither depressed nor impulsive . . . [he] has grown up and matured." However, Dr. Atkins admitted there was a likelihood A.N.H. would experience depression in the future based on his prior depression diagnosis.

At the conclusion of the hearing, the judge found the State proved "by a preponderance of the evidence . . . [A.N.H.] poses a significant danger of bodily injury to [him]self or others by possessing, owning, or receiving a firearm." As

6

a result, the judge issued a FERPO.

The judge found Detective Lieutenant Totten's testimony credible. She also found Dr. Atkins' testimony "credible in some respects and not credible in other respects." She noted the doctor "didn't appear to have a good working understanding or knowledge of the facts . . . in [A.N.H]'s history," and "minimized some of [A.N.H.]'s prior history." The judge also found from the testimony that it was "unclear whether . . . Dr. Atkins had a good understanding of whether there was a recommendation for follow-up treatment."

The judge then considered the FERPO factors under N.J.S.A. 2C:58-23(f) as applied to A.N.H. Factors one through eight under the Act require a judge to determine whether the subject displays any of the following characteristics:

> (1) has any history of threats or acts of violence by the respondent directed toward self or others;
>
> (2) has any history of use, attempted use, or threatened use of physical force by the respondent against another person;
>
> (3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991," . . . ;
>
> (4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the "Sexual Assault Survivor Protection Act of 2015," . . . ;

7

(5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to section 1 of [L. 1992, c. 209] [(N.J.S.A. 2C:12-10)], or domestic violence offense enumerated in section 3 of [L. 1991, c. 261] [(N.J.S.A. 2C:25-19)];

(6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse; or

(8) has recently acquired a firearm, ammunition, or other deadly weapon.

[N.J.S.A. 2C:58-23(f).]

If a judge finds at least one of the foregoing factors, the judge may consider four additional factors pertaining to a subject's mental health. Specifically, a judge may consider whether the subject:

(12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;

(13) has received or is receiving mental health treatment;

(14) has complied or has failed to comply with any mental health treatment; and

(15) has received a diagnosis of a mental health disorder.

[Guideline 3(d).]

Regarding factors one, two, and eight, the judge found there was no question those factors applied in A.N.H.'s case. Regarding the mental health factors, based on A.N.H.'s medical records, the judge found A.N.H. "was voluntarily committed," "received mental health treatment" while at a hospital, "received a diagnosis" of depression, and "upon his discharge . . . was recommended to receive mental health treatment."

A.N.H. filed an appeal. Pursuant to Rule 2:5-1(b), the judge issued a written statement of reasons amplifying her decision to issue a FERPO. In her amplification, the judge repeated her findings that Detective Lieutenant Totten was a credible witness and that "Dr. Atkins' testimony [was] credible in some respects and not credible in other[]" respects, due to his lack of a "clear understanding of the facts which le[d] to [A.N.H.]'s mental health hospitalization." For those reasons, the judge explained she "did not place great weight on Dr. Atkins's conclusion . . . that [A.N.H.] did not pose a danger to [him]self or others and was able to safely possess firearms." Additionally, the judge set forth a detailed analysis for her application of factors one, two, eight, twelve, thirteen, fourteen, and fifteen in issuing the FERPO.

In finding factor one, the judge explained there was no dispute A.N.H. had

9

a "history of threats and acts of violence." Regarding factor two, the judge relied on her analysis under factor one and determined A.N.H. had a "history of both threatened and actual violence." In applying factor eight, the judge found A.N.H. acquired a firearm in June 2020, the JTTF became involved in August 2021, and A.N.H., "at wors[t] . . . falsified his application; at best . . . minimized his mental health issues" when he applied for his FPIC.

Turning to the mental health factors, regarding factor twelve, the judge stated A.N.H. was committed to the hospital "voluntarily." However, the judge noted his commitment was a direct result of the incident with the samurai sword; A.N.H. was escorted to the hospital by the DTPD; and A.N.H. was committed to the hospital by his mother for a mandatory seventy-two hours. The judge found factor thirteen applied because A.N.H. received mental health treatment at the hospital in May 2016. In applying factor fourteen, because A.N.H. failed to seek the recommended follow-up mental health treatment per Dr. Hall, and Dr. Atkins testified "no one can predict with 100% certainty whether a person will [again] experience past [mental health] symptoms," the judge concluded A.N.H. failed to comply with mental health treatment. Finally, because A.N.H. was diagnosed by Dr. Hall with impulse control disorder and an unspecified depressive disorder, the judge found factor fifteen applied.

10

On appeal, A.N.H. raises the following arguments:

POINT I

THE COURT BELOW ERRED BY FINDING THAT N.J.S.A. 2C:58-23(f)(8) APPLIES SINCE APPELLANT HAS NOT RECENTLY PURCHASED A FIREARM.

POINT II

THE COURT BELOW ERRED BY APPLYING FACTOR 12, WHICH CONCERNS INVOLUNTARY COMMITMENTS, TO APPELLANT'S VOLUNTARY COMMITMENT FOR THREE DAYS AT A MENTAL HEALTH FACILITY.

POINT III

THE COURT BELOW ERRED BY GRANTING THE FERPO WHERE GOVERNMENT FAILED TO PRESENT ANY EVIDENCE OUTSIDE OF HEARSAY THAT APPELLANT POSED A SIGNIFICANT, IMMEDIATE, AND PRESENT DANGER OF CAUSING BODILY INJURY TO HIMSELF OR OTHERS.

POINT IV

PER BRUEN, DENIAL OF SECOND AMENDMENT RIGHTS UPON N.J.S.A. 2C:58-23(f)(8)'S "RECENTLY ACQUIRED A FIREARM, AMMUNITION, OR ANOTHER DEADLY WEAPON" STANDARD SHOULD BE FOUND UNCONSTITUTIONAL.

A-2298-21

"The scope of appellate review of a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). We are bound by the trial court's findings "when supported by adequate, substantial, credible evidence." Id. at 411-12. Where evidence is testimonial, as in this case, and involves credibility questions, deference is "especially appropriate" because the trial judge observed the witnesses first-hand. Id. at 412.

Our review of a FERPO is guided by our holding in In re D.L.B., 468 N.J. Super. 397 (App. Div. 2021). As we explained in D.L.B., the Act is intended to address the growing number of mass shootings by removing firearms from those who have shown "red flags" indicative of future violence. Id. at 400-02.

There are eight factors under the Act to be considered by the trial judge when deciding whether to issue a FERPO. N.J.S.A. 2C:58-23(f)(1) to (8). No single factor is determinative. After weighing each of the factors, "[t]he court shall issue the FERPO . . . if it finds 'by a preponderance of the evidence at the hearing that the respondent poses a significant danger of bodily injury to the respondent's self or others' by possessing a firearm." D.L.B., 468 N.J. Super. at 406-07 (quoting N.J.S.A. 2C:58-24(b)). If one of the eight statutory factors is found by a judge, the Guidelines list consideration of additional factors related to a subject's mental health.

12

Here, the judge issued the FERPO finding factors one, two, eight, twelve, thirteen, fourteen, and fifteen applied. Having reviewed the record, we are satisfied the judge did not abuse her discretion in finding the State met its burden of proof by a preponderance of the evidence that A.N.H. was a danger to himself and others for the reasons set forth in the judge's written amplification of reasons in support of the FERPO.

A.N.H. specifically challenges the judge's findings that FERPO factors eight, twelve, and fourteen applied. A.N.H. also contends there was insufficient evidence to support the judge's finding that he was a "significant, immediate and present danger" to himself and others.

The State agrees the judge's finding that factor eight applied was mistaken because A.N.H. had not recently acquired a firearm. However, A.N.H. does not challenge the judge's findings under factor one, history of threats or acts of violence directed toward self or others, and factor two, history of use, or threatened use of physical force against others. Thus, the judge properly then considered A.N.H.'s mental health under factors twelve, thirteen, fourteen, and fifteen.

In considering factor twelve, the judge had to determine if A.N.H. had a prior involuntary commitment in a hospital or treatment facility for persons with

A-2298-21

psychiatric disabilities. The judge found this factor applied because A.N.H.'s mother took A.N.H., who was a minor at the time, to the local hospital for a psychiatric evaluation based on the May 2016 sword incident with his sister.

This matter is similar to a civil commitment of a minor under Rule 4:74-7A. Under that Rule, a parent may request admission of a minor under the age of fourteen to a hospital for mental health treatment without a court order. A.N.H.'s own expert, Dr. Atkins, agreed A.N.H.'s mother took her son, with a police escort, to the local hospital for a psychiatric evaluation and that A.N.H. remained in the hospital for a seventy-two hour "mandatory hold" because the hospital "found a reason to keep him." Based on these discrete facts, the judge did not err in finding factor twelve applied.

Regarding factor thirteen, receipt of mental health treatment, factor fourteen, failure to comply with any mental health treatment, and factor fifteen, diagnosis of a mental health disorder,[3] we are satisfied the record supported the judge's findings in support of the FERPO. Based on the medical records, A.N.H. received mental health treatment at a local hospital in May 2016, thus satisfying factor thirteen. The same medical records indicated A.N.H. was directed to

---

[3] Contrary to A.N.H.'s argument, the Act does not require the mental health diagnosis to be rendered at or around the date of the FERPO.

A-2298-21

participate in continued mental health treatment following his discharge from the hospital and failed to do so, thus satisfying factor fourteen. Additionally, the hospital records revealed a diagnosis of unspecified depressive disorder and impulse control disorder upon A.N.H.'s discharge on May 17, 2016, thus, the judge did not err in applying factor fifteen.

The judge carefully reviewed the police and medical records, considered the trial testimony, and rendered credibility findings in support of the issuance of the FERPO. Given the ample evidence in support of finding factors one, two, twelve, thirteen, fourteen, and fifteen applicable, we are satisfied the judge did not abuse her discretion in issuing the FERPO. Except as to the finding of factor eight, the judge's application of the factors under the Act and the Guideline was correct, and the weight accorded to each factor by the judge was supported by the evidence.

We next consider and reject A.N.H.'s argument that the judge impermissibly relied on hearsay in issuing the FERPO. "[T]he rules governing admissibility of evidence at trial shall not apply to the presentation and consideration of information at the [FERPO] hearing." D.L.B., 468 N.J. Super. at 406 (quoting Guideline 5(c)) (second alteration in original). Moreover, the judge did not rely solely on hearsay evidence. Rather, the judge considered and

relied on Detective Lieutenant Totten's personal knowledge regarding A.N.H.'s interactions with the DTPD in support of the FERPO.

We also reject A.N.H.'s claimed violation of his Second Amendment rights based on the United States Supreme Court's decision in N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. ___, 142 S.Ct. 2111 (2022). Prior to the United States Supreme Court's decisions in Bruen, the Court approved of state-imposed limitations on the right of mentally ill people to possess firearms. See District of Columbia v. Heller, 554 U.S. 570, 626 (2008) (stating "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by . . . the mentally ill"); see also McDonald v. City of Chicago, 561 U.S. 742, 786 (2010) ("We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by . . . the mentally ill.'") Indeed, Bruen recognized that laws prohibiting possession of a firearm by a mentally ill individual are "presumptively lawful." Bruen, 142 S.Ct. at 2162, n.26 (Kavanaugh, J., concurring). Based on United States Supreme Court precedent, we discern no violation of A.N.H.'s Second Amendment rights under the Act.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16